STATE, LEVERITT NEWCOMB, PROSECUTOR, v. FRANKLIN
TOWNSHIP AND DAVID VAN HOOK.

1. The special act of 1868, (*Pamph. L., p.* 72,) and the general laws, (*Rev.,
pp.* 1163, 1165,) authorizing sale of lands for taxes, have not repealed
section 34, by which timber, &c., on unimproved and untenanted lands
may be sold.

2. Where lands are listed by an insufficient description, and are sold for
taxes, the sale will be set aside, but the assessment and the proceedings
to collect the same, so far as to fix the lien and charge upon the prop-
erty and person, are amendable under act of 1881. *Pamph. L., p.*
194.

---

*On certiorari.*   In case of taxation.

Argued at February Term, 1884, before Justices SCUDDER,
DIXON and REED.

For the prosecutor, *J. J. Crandall.*

For the defendant, *John W. Westcott.*

Newcomb v. Franklin Township.

The opinion of the court was delivered by

SCUDDER, J.   The lands of William A. House were assessed for the taxes of 1877, in Franklin township, by the following description, in the usual form of duplicates: "Owner, William A. House, (Copp Place)—improved acres, ten; unimproved acres, ten.   Value, $1000," &c.

This was returned, among other delinquent and unpaid taxes, to the township committee, by the collector, with the description changed, as follows: "Name, House, William A. (Copp Place); acres, 20; tax, $6.60, &c."

On this return, lands were sold under authority of the act to facilitate the collection of taxes in the township of Mullica, in the county of Atlantic, (*Pamph. L.* 1868, *p.* 72,) extended to Franklin township, Gloucester county.  *Pamph. L.* 1869, *p.* 1125.   David Van Hook was the purchaser, and received a certificate of sale from the township committee.

Several of the reasons assigned for setting aside these proceedings are answered in *Schmoele* v. *Galloway,* 15 *Vroom* 145, referring also to *Egg Harbor H. & V. Co.* v. *Galloway,* 13 *Vroom* 415.

One of the objections relates to the change made in the assessment, from ten acres, of improved land and ten acres of unimproved lands, to twenty acres of land.   The position taken is that by the form of the assessment different methods of procedure for the collection of the taxes are indicated; that under section 34 of the general tax law, only the timber, wood, herbage or other vendible property of the owner can be sold to raise the tax on unimproved land; while, by section 114 and the succeeding sections relating to the sale of lands for taxes, (*Rev., p.* 1163,) and section 124, (*Rev., p.* 1165,) the lands may be sold for a term of years.   As the assessor had regarded the distinction between unimproved and improved lands in his duplicate, it is claimed that the collector and township committee were bound to observe it in the subsequent proceedings for collection.

It is true that the special act of 1868 does not repeal section 34 of the general tax law relating to the collection of taxes on

unimproved or untenanted lands, and the sections of the general tax law above referred to are not inconsistent with the provisions for the sale of timber for taxes on certain lands. All are, in terms, enabling statutes, and tax officers may use either method for the collection of taxes on unimproved or untenanted lands ; the timber, &c., may be sold under section 34, or the land itself may be sold for a term of years either under the special law of 1868 or the above-cited general statutes. Since these acts were passed, sales of timber for taxes on unimproved lands have been recognized in *Morrow* v. *Dows,* 12 *C. E. Green* 442 ; 1 *Stew. Eq.* 459.

In this case there was no substantial error in construing the assessment and regarding the twenty acres assessed as real estate for the purpose of enforcing a sale of the lands under the special act of 1868, unless it appears that they were divided into two distinct and separate lots of ten acres each, and were so situated as to be chargeable with separate assessments, and even this would be amendable. They were jointly valued by the assessor at $1000, and the certificate of sale given by the township committee to Van Hook, the purchaser, shows that the twenty acres were contiguous, and described in four courses enclosing the whole tract. There is no material variance in what is called the bunching of these two parcels of land, unless it be found in the supposed distinctive remedies for the enforcement of the tax, and that we have shown is not tenable.

Another reason assigned is that the description of the land is not sufficient. The only description in the assessment-book is, "Acres, 10," and in the subsequent proceedings, "Acres, 20." If it be said that "Copp Place" may be the name of the property assessed and sold, the answer is that in every case where it appears in the return it is found under the name of the owner, William A. House, and over his name is written the word "names," or the words "names assessed." The words "Copp Place" may therefore be the residence of William A. House elsewhere than on these lands, and this finds support in the description of the lands in the certificate given by the township committee to the purchaser at the tax

sale, where they are described as bounded on Catawba avenue and adjoining lands of Sanderson R. Martin and A. Hodgebrown, by metes and bounds. Nowhere are they in any recital or reference found in the return called " Copp Place." No proof has been taken to show that the land was known by this name. Within the rule established in *State, Parker, pros.*, v. *City of Elizabeth*, 10 *Vroom* 689 ; *State, Rutherford Park, pros.*, v. *Towship of Union*, 7 *Vroom* 309 ; *State, Allen, pros.*, v. *Woodbridge*, 13 *Vroom* 401, and *Clark* v. *Mulford*, 14 *Vroom* 550, the description, "Acres, 20," is not sufficient, nor is " Copp Place " so connected with it that it can be used for further certainty.

This error is fatal to the sale and certificate, and the deed, if any have been given ; but it will not annul the assessment and the proceedings to collect the same, so far as to fix the lien and charge upon the property and person, for the court is enabled and required to amend all irregularities or errors or defects in such assessments and proceedings by the act of March 23d, 1881. *Pamph. L.*, *p.* 194.

In Clark *v.* Mulford, above cited ; *State* v. *Montclair R. R. Co.*, 14 *Vroom* 524, and *Hetfield* v. *Plainfield*, *ante p.* 119, such irregularities were held to be amendable. The construction of this law must be liberal within its provisions for levying and collecting taxes assessed on persons and property, and for the prevention of merely technical errors in listing, and in the proceedings to collect, which do not affect the substantial rights of taxpayers. The law is made both retroactive and prospective, so as to include all unpaid taxes assessed before it was passed and those levied after its enactment within its healing power, and to give relief against the many devices that are used to avoid the just payment of taxes imposed for public expenses. The court will order the description of the land intended to be assessed to be so amended as to describe them by their name or location, and will make such other order as may be applied for in the premises.

The sale for taxes will be set aside, but the assessment will be held good and amendable.